## Real Estate-Land Title and Trust Company, Appellant, *v.* William Cohen Building and Loan Association.

Argued, October 4, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Louis Jacobs,* for appellant.

*Albert M. Cohen,* for appellee.

OPINION BY JAMES, J., March 4, 1938:

This is an action in assumpsit on a written indemnity agreement executed by the defendant. The court below sustained the questions of law raised by the affidavit

of defense and entered judgment in favor of the defendant. From that judgment the plaintiff appeals.

The plaintiff held a first mortgage dated May 18, 1925, in the amount of $2,500, on certain premises owned by Benjamin Glynn. The defendant, who held a second mortgage in the amount of $2,000, entered into a written agreement with the plaintiff, on May 16, 1929, whereby in consideration of the extension of the first mortgage for a period of three years from May 18, 1929, the defendant agreed to indemnify the plaintiff to the extent of $2,500 against default by Benjamin Glynn.

The agreement provided, inter alia: "Whereas, the obligor herein holds a second mortgage of two thousand dollars secured upon the above mentioned premises and is desirous of protecting its investment and at the same time indemnify the aforementioned company by reason of their extending the said mortgage for a further period of three years. Now therefore the condition of this obligation is such, that if the mortgagor above referred to, Benjamin Glynn, does well and truly pay or cause to be paid to the above named obligee, interest on the said obligation as and when the same becomes due and payable, as provided under the terms of the bond and mortgage held by The Real Estate-Land Title and Trust Company, and does produce to the said company tax and water rent receipts which are or may be assessed against the said premises, said receipts to be produced on or before the first day of September of each year during the term hereof, and further, keep the building mentioned in the said mortgage insured against any loss or damage by fire for the benefit of the mortgagee in an amount not less than two thousand dollars, in a company satisfactory to the said mortgagee, and if the above mentioned mortgagor, Benjamin Glynn, shall perform or cause to be performed all other stipulations contained in the said bond and mortgage until such time as the same shall become due, then this obligation

to be void; otherwise to be and remain in full force and effect."

Plaintiff instituted foreclosure proceedings on September 22, 1936, on failure of the mortgagor to pay the principal or interest from November 18, 1935. At a sheriff's sale held November 2, 1936, the plaintiff purchased the premises for $1,550 and assessed its damages in the sum of $1,370.97, for which amount, together with interest thereon from November 19, 1936, the date of settlement with the sheriff, it instituted suit against the defendant.

The affidavit of defense avers that the agreement did not guarantee the payment of the principal sum; that it was not agreed to indemnify the plaintiff for a longer period than three years from May 18, 1929; and that plaintiff did not aver any loss prior to May 18, 1932, on which date defendant's liability ceased.

Under the collateral bond signed by it, the defendant was to be held liable if the interest, taxes, or water rents were not paid or the buildings were not insured, and it was agreed that if the mortgagor "performed all other stipulations contained in the said bond and mortgage until such time as the same shall become due, then this obligation to be void; otherwise to be and remain in full force and effect." There is nothing in the agreement in reference to the payment of the principal sum. The provision relating to the performance of "all other stipulations contained in the said bond and mortgage" does not include the payment of principal since the liability for the performance of those stipulations was to continue only "until such time as the same [the bond and mortgage] shall become due." If it were intended to bind the defendant to pay the principal, it would seem that its payment would have been expressly provided for as was the payment of taxes, water rent, interest and insurance. See *Second Ave. Traction Co. v. United Traction Co. of Pitts.*, 328

Pa. 257, 260, 195 A. 25. It should be noted in this connection that no part of the principal sum became due until May 18, 1932. During the period of the extension, which terminated on May 18, 1932, there was no failure to comply with the conditions of the collateral bond. The plaintiff's statement of claim alleged that interest from November 18, 1935 has not been paid by the mortgagor. This default occurred three and a half years after the expiration of the extension period. This can scarcely be termed a default within the meaning of the agreement since the agreement was that defendant was to be bound for the performance of the "stipulations contained in the said bond and mortgage until such time as the same shall become due"; i. e., May 18, 1932. It also appears from the agreement that tax and water rent receipts were to be produced on the first day of September "of each year during the term hereof." It does not require the production of receipts after the expiration of the terms of the agreement. It is clear, therefore, that the agreement did not contemplate liability for default after May 18, 1932, and the pleadings do not indicate any default prior to or at that time.

Counsel for the appellant has submitted a number of cases distinguishing contracts of guaranty from contracts of suretyship. He then urges the conclusion that the contract under consideration is a contract of guaranty, since the agreement does not fix a time for its performance. With this as a premise, he then concludes that the defendant is liable not only for the principal, but for interest which became due some years after the expiration of the extension agreement. The fault with this reasoning is that the premise is false. The agreement does fix a definite time for its performance. Interest must be paid on the days fixed by the mortgage. Tax and water receipts must be produced on specified dates. Insurance must be maintained at all times. Moreover, the period of liability for default is definitely

212

fixed as three years from May 18, 1929. Under the terms of the agreement the mortgage became due May 18, 1932. How can it be argued then that there is no fixed time in which the agreement is to be performed? However, the fact that no time is fixed for performance in the event of default is immaterial where, as here, there has been no default. The express terms of the agreement limit the liability of the defendant to a definite period and for particular items of default. "Where the language used is plain and unambiguous, the rights of the parties must be determined by the provisions of the instruments wherein they committed their agreement to writing": *Musselman v. Sharswood B. & L. Assoc.*, 323 Pa. 550, 187 A. 419. It would, therefore, serve no useful purpose to attempt to pigeonhole this agreement as either one of guaranty or of suretyship.

*League Island Community B. & L. Assoc. v. Doyle,* 323 Pa. 287, 185 A. 636, cited by appellant as controlling, is not in point. In that case the alleged agreement was that if the association "should *at any time* suffer *any loss* by reason of [the] loan ...... [he would] hold [himself] responsible for the same." The court concluded that the obligation was one of guaranty. The court also stated that the covenants in a bond should be construed to mean what the parties intended in so far as that intention can be ascertained by the words used. *Germantown Trust Co. v. Emhardt,* 321 Pa. 561, 184 A. 457, is also different on its facts. There the defendant signed the agreement of extension itself and guaranteed the payment of interest and principal. In *Manufacturers & Merchants B. & L. Assoc. v. Willey et al.,* 321 Pa. 340, 183 A. 789, the defendants agreed to secure the plaintiff against *any loss* under the bond and mortgage, and, therefore, it differs from the case at bar. The case was decided in the defendant's favor, however, because plaintiff had not sustained any loss at time of suit.

Judgment affirmed.